**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MCI WORLDCOM NETWORK SERVICES, INC.,** | ) ) | **CASE NO. 5:04CV596** |
| **Plaintiff,** | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| Vs. | ) ) | |
| **W. M. BRODE COMPANY,** | ) ) | **MEMORANDUM AND ORDER** |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court on Defendant W.M. Brode Company's ("Brode") Motion for Partial Summary Judgment. After careful consideration and review the Court finds that partial summary judgment is warranted as there are no genuine issues of material fact and Defendant is entitled to partial summary judgment as a matter of law.

### FACTS

The relevant facts in this case are not in dispute. Plaintiff MCI Worldcom Network Services, Inc., ("MCI") is a telecommunications company that provides telecommunication services to customers

1

through a nationwide network of fiber optic cables, buried underground. Defendant Brode is a construction company. On March 28, 2002, Brode was performing excavation work pursuant to a contract to repair a bridge. In the course of its excavation, Brode inadvertently severed fiber optic cables owned by MCI. MCI filed suit alleging trespass, negligence and breach of contract claims against Brode for damages incurred as a result of the severed cable. The testimony of MCI's representative revealed that there was a millisecond or two of interrupted service; but that traffic was restored automatically due to the ring system used by MCI. This ring system was designed to provide redundancy in the MCI network. A computer automatically redirects telecommunication traffic from a damaged path to a redundant path. There is no evidence that there was a loss of service or complaints of loss of service from MCI customers as a result of Brode's severing the MCI cable. The damaged cable line was unable to carry traffic for approximately eight and one half hours.

## THE ISSUE

MCI seeks to recover damages for the cost to repair the severed cable and damages for the loss of the use of the cable. The issues before this Court are:

> (a) may MCI recover loss-of-use damages to its fiber optic cable when its system was intended to have full capacity but is designed to automatically reroute and accommodate traffic around damaged cables with no interruption of service and, there is no evidence of loss of revenue or loss of user connections during the time it took to repair the damaged cable and;

> (b) if loss of use damages are available to MCI, is the proper measure of those damages the pre-injury value of the damaged cable or the rental value of comparable capacity from a competing telecommunications provider for the time reasonably necessary to make repairs?

## ARGUMENTS

MCI seeks to recover the rental value of substitute network cable capacity purchased from a competitor's network to replace the loss of use of the cable damaged by Brode. MCI alleges that the

rental value of substitute capacity is eight hundred eighty-three thousand six hundred twenty-two dollars and two cents ($883,622.02). Brode argues that MCI never rented additional capacity as the MCI network has a built-in rerouting system that channels affected telecommunications traffic along alternate fiber optic cable lines as protection against disruption of service due to accidents like the one that occurred in this case.  Defendant's Motion for Partial Summary Judgment argues that MCI should not be allowed to recover loss-of-use damages when no actual loss of service occurred.

## LAW

### Standard of Review

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

3

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

### Loss-of-Use Damages

It is a fundamental principle of the law of damages in Ohio that "a plaintiff should be made whole for his injuries but should not receive a windfall." *In re Foote Memorial Hospital/Patient Care Information System,* 25 F.3d 406, 410 (6th Cir. 1994). "In making a party injured by wrongful conduct whole, the damages awarded should not place the injured party in a better position than that party would have enjoyed had the wrongful conduct not occurred." *Collini v. Cincinnati,* 87 Ohio App. 3d 553 (1993). Compensatory damages are intended to make whole the plaintiff for the wrong done to him or her by the defendant. *Fantozzi v. Sandusky Cement Products Co.,* 64 Ohio St.3d 601, 612 (1992). Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefor. *Id.*

In Ohio, courts have held that loss-of-use damages are compensable for damages to real and

personal property. *Zartman v. Schepman* (Sep. 1999) Montgomery County App. No. 17634, unreported, relying on *Ohio Collieries Co. v. Cocke*, 107 Ohio St. 238 (1923), and *Hayes Freight Lines, Inc. v. Tarver* 148 Ohio St. 82 (1947). MCI cites to *Cincinnati Traction Co. v. Feldkamp,* 19 Ohio App. 421 (1924), which held, "a person whose automobile is injured by the tort of another is entitled to recover compensation for the loss of its use during the time necessarily expended in making its repairs. The rule by which the jury are to determine the value of that use is that when a plaintiff is deprived of the use of property valuable for use, and the property is something that can be replaced, his damages are the expenses of hiring the property which he is forced to substitute for it." *Id.* Plaintiff MCI argues that the measure of damages in a loss-of-use case should be the reasonable rental value of a substitute even if such rental is never acquired. Plaintiff draws support for this position from Restatement (Second) of Torts §931 (1979) which states, "if one is entitled to a judgment for the detention of, or for preventing the use of, land or chattels, the damages include compensation for (a) the value of the use during the period of detention or prevention or the value of the use of or the amount paid for a substitute, and (b) harm to the subject matter or other harm of which the detention is the legal cause." In the Comments section to clause (a) it states, "the owner of the subject matter is entitled to recover damages for the loss of the value of the use of at least the rental value of the chattel or land during the period of deprivation. This is true even though the owner in fact has suffered no harm through the deprivation, as when he was not using the subject matter at the time or had a substitute that he used without additional expense to him." *Id.* at cmt. (a). The parties *sub judice* do not dispute that Ohio has adopted this Restatement.

      Defendant argues that MCI suffered no damages from loss of use as its ring system was

designed to instantly reroute traffic with no service disruption. Therefore, Brode should not have to compensate MCI because MCI had the foresight to invest in a redundant cable to avoid loss of service in just these situations. To support its argument, Brode cites to *MCI Worldcom Network Services, Inc. vs. Lind,* No. 00-47-7, 2002 U.S. Dist. Lexis 26467 (S.D. Florida, December 17, 2002). In *Lind,* the U.S. District Court, in construing nearly the exact same facts and issues, held that MCI was not entitled to loss-of-use damages where there was "no evidence that MCI was unable to provide uninterrupted service to its customers as a result of the damage to the cable by defendant." *Id.* at 4. The Court found that rental value was not an appropriate measure of loss-of-use damages as "no party in MCI's position, whether wealthy or destitute, would have reasonably considered renting a replacement transmission system, because the loss of the cable did not affect transmission of its signals. Thus, in this case, rental value is not indicative of loss- of-use damages." *Id.* at 12,13. In addition, the Court in *Lind* held that where the value of replacing the cable amounted to $1,400 but MCI sought nearly one million dollars, the result would mean an unjustifiable windfall for MCI and would be grossly unfair. *Id.* at 14.

In an Ohio automobile case, *Stuart v. National Indemnity Co.,* 7 Oh. App.3d 70 (1982) the Court held that Plaintiff was not entitled to loss-of-use damages when the cost of repairs exceeded the value of the vehicle after repairs. Defendant also cites to a Sixth Circuit case, *Truform, Inc. v. General Motors Corp.,* 80 Fed. Appx. 968 (6th Cir. 2003), in support of its proposition that there can be no recovery when no actual loss of service has occurred. In *Truform*, the Sixth Circuit denied plaintiff an award of damages for containment costs associated with a fear that delivery problems between Truform and American Axle made American Axle afraid it would force a GM shutdown. The

6

court held as no actual shutdown occurred there could be no recovery for alleged containment costs when plaintiff could not demonstrate actual damages. Similarly, Brode argues, as no loss of service occurred MCI cannot demonstrate actual damages for loss of use of the severed cable.

## **ANALYSIS**

In many respects this is a case of first impression in Ohio. There is but one case in Ohio with similar facts. In *Ohio Bell v. Buckeye Directional Boring*, No. 01CVH03-2230, (March 15, 2002) Franklin County Court of Common Pleas, (decision granting partial summary judgment) the trial court ruled, in a severed telecommunications cable case, that Ohio law tracked the Restatement of Law (Second) Torts, § 929, in allowing for loss-of-use damages as separate and distinct from restoration costs. The issue before the court was a question of law regarding plaintiff's entitlement to compensatory damages for loss-of-use and whether fair market rental value was an appropriate measure of those damages, regardless of whether or not Plaintiff actually rented a substitute. In its opinion, the court found that loss-of-use damages were appropriate for injury to underground cables and, fair rental value, during the period of restoration, was a reasonable measure of the loss of use. The court tempered this finding by emphasizing that, although plaintiff's claims could proceed on loss-of-use damages and the use of fair rental value as a measure of loss-of-use, the damage claims would be harmonized with prevailing, fundamental principles of Ohio law of damages.

This Court finds the opinion of the U.S. District Court for the Southern District of Florida in *Lind* more persuasive. In the *Lind* case, the District Court drew a distinction between the rental value as a measure of loss-of-use and the use of rental value as indicative of loss of use. Using rental value as

7

an indication of loss of use is akin to placing the cart before the horse. This Court must first determine that a loss of use has occurred.

Moreover, this Court does not find the loss of the use of an automobile analogous to the case *sub judice*. MCI, in the creation and implementation of its fiber optic system developed the capability to instantaneously reroute interrupted telecommunications traffic from damaged lines to redundant lines without loss of service. This ingenious system was presumably implemented to provide better service to customers, which in turn makes it more attractive to customers and investors. This is not comparable to the loss of use of an automobile. The owner of a damaged automobile must necessarily find an alternate means of similar transportation. This requires the location, acquisition and transportation of the replacement vehicle, assuming one can afford it, to cover the function of the lost use. MCI did not need to replace the cable as it already had an alternate connection integrated into its ring network. As there is a clear distinction between the transportation of telecommunications traffic and the transportation of automobile traffic, so must there be a distinction drawn between the loss of use of a vehicle and the loss of the use of an integrated, redundant telecommunications cable.

The issues in this case, though new in Ohio, have been reviewed by Courts in other circuits. Recently, the Fourth Circuit Court of Appeals in *MCI Worldcom Network Services, Inc. v. OSP Consultants*, 78 Fed. Appx. 876 (4th Cir. 2003) upheld a District Court's ruling that MCI was not entitled to loss-of-use damages as it was able to reroute traffic and there was no evidence that MCI suffered damages during the time the cable was unavailable. Procedurally, both the Fourth Circuit in *OSP Consultants* and the Eleventh Circuit (*MCI Worldcom Network Services, Inc. v. Mastec, Inc.,* 370 F.3d 1074 (11th Cir. 2004)) have certified the issue of loss-of-use damages in MCI severed cable

8

cases to their respective state supreme courts for guidance.

The Virginia State Supreme Court upon certification from the Fourth Circuit held, pursuant to *Brooklyn Eastern District Terminal v. United States*, 287 U.S. 170 (1932), that as MCI does not "reserve particular cables for use exclusively in emergencies, it was not entitled to loss- of-use damages. In *Brooklyn Terminal,* a dredge owned by the United States collided with a tugboat used to pull car floats for railroads. Brooklyn Terminal worked its remaining fleet of tugs overtime rather than hire a substitute for the damaged tug. There was no evidence that the owner incurred additional expenses for the overtime work of his remaining tugs. Unlike the spare boat case of *The Cayuga*, F. Cas. 326 (E.D.N.Y. 1868)(No. 2,535) affirmed 5 F.Cas. 329 (C.C.E.D.N.Y. 1870)(No. 2, 537) affirmed 81 U.S. 270 (1871) where the Supreme Court held the ferry owner was entitled to compensation for the loss-of-use measured by the cost of hiring a substitute boat even though no substitute was in fact hired, *Brooklyn Terminal* held that the *Cayuga* doctrine was not to be extended "to boats acquired and maintained for the general uses of the business." *Brooklyn Terminal* at 174-176. The *OSP Consultants* case determined that the *Brooklyn Terminal* decision was the appropriate standard for MCI loss-of-use damages. The Virginia Supreme Court found that MCI used its excess network capacity for the general use of its business to "accommodate varying levels of telecommunications traffic. While it is true that the excess capacity enables MWNS to reroute traffic in the event of emergencies, MWNS does not reserve particular cables for spare use exclusively in emergencies, as in the 'spare boat' cases." *OSP Consultants* at 396. The Virginia Supreme Court refused to allow the expenses saved by MCI as a result of its foresight in creating its redundant cable network to be charged to Defendant "as if they had not been saved at all." *Id.*

9

**CONCLUSION**

This Court finds the rulings of the U.S. District Court of the Eastern District of Virginia , Supreme Court of Virginia, the Fourth Circuit Court of Appeals, and U.S. District Court of the Southern District of Florida compelling and decisive. MCI may not charge the expenses saved  MCI by its ingenious redundant network to Brode as if the expenses had never been saved. MCI had the foresight and good business acumen to implement a system that allowed for uninterrupted network service in the event of damage to a particular segment of cable. As a result MCI presumably gained a competitive advantage, enhanced customer service and forestalled expenses it may have incurred but for the redundancy capability of its network. As in *Brooklyn Terminal*, this redundancy was used in the ordinary course of business and was not reserved expressly for emergencies. Therefore, the Court finds that loss-of-use damages are inappropriate and grants Defendants motion for partial summary judgment as MCI may not recover loss of use damages when no actual of loss of service occurred.

IT IS SO ORDERED.


  June 7, 2005                              /s/ Christoher A. Boyko
   Date                                     CHRISTOPHER A. BOYKO
                                            United States District Judge
                                            Original signature on file