## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MCI WORLDCOM NETWORK SERVICES, INC., | ) ) | CASE NO.5:04CV596 |
| Plaintiff, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| | ) | |
| W. M. BRODE COMPANY. | ) | MEMORANDUM AND OPINION |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment.  For the following reasons, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's negligence *per se* claim and overrules Plaintiff's Motion on the same.  The Court grants Summary Judgment for Defendant on Plaintiff's breach of contract claim and overrules Plaintiff's Motion on the same.  The Court grants Summary Judgment for Defendant on Plaintiff's trespass claim and overrules Plaintiff's Motion on the same.  The Court grants Defendant's Motion for Summary Judgment on Plaintiff's claim for Punitive Damages.  The Court denies Plaintiff and Defendant's Motions for Summary

1

Judgment on the negligence and contributory negligence claims, as these involve genuine issues of material fact.

## FACTS

The following facts were recited in a prior Court opinion. Plaintiff MCI Worldcom Network Services. Inc., ("MCI") is a telecommunications company that provides telecommunication services to customers through a nationwide network of fiber optic cables, buried underground. Defendant Brode is a construction company. On March 28, 2002, Brode was performing excavation work pursuant to a contract to repair a bridge. In the course of its excavation, Brode severed fiber optic cables owned by MCI. MCI filed suit, alleging trespass, negligence and breach of contract claims against Brode for damages incurred as a result of the severed cable. The testimony of MCI's representative revealed there was a millisecond or two of interrupted service; but that traffic was restored automatically due to the ring system used by MCI. This ring system was designed to provide redundancy in the MCI network. A computer automatically redirects telecommunication traffic from a damaged path to a redundant path. There is no evidence that there was a loss of service or complaints of loss of service from MCI customers as a result of Brode's severing the MCI cable. The damaged cable line was unable to carry traffic for approximately eight and one-half hours.

### Plaintiff's Summary Judgment Motion

Plaintiff seeks summary judgment on the following issues:

1) Brode's damage to MCI's cable constitutes a trespass pursuant to Ohio law.

2) Brode's conduct constitutes negligence under Ohio statute, Ohio common law, constitutes a breach of duty owed to MCI and was the proximate cause

2

of MCI's injury.

3) As a third-party beneficiary of Brode's contract with Akron Regional Transit Authority

(RTA), MCI alleges Brode breached the specific terms of the contract and MCI is entitled

to damages arising from the alleged breach.

4) MCI seeks summary judgment on Brode's assertion that MCI was contributorily

negligent.

### Defendant's Motion for Summary Judgment

Defendant Brode seeks summary judgment on all claims contained in Plaintiff's

Complaint.

### STANDARD OF REVIEW

### Summary Judgment

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is

appropriate when no genuine issues of material fact exist and the moving party is entitled to

judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v.*

*United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the

absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the

lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe

the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of*

*Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557,

562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the

burden of proof at trial does not establish an essential element of its case. *Tolton v. American*

*Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## Negligence

The parties agree that the standard of care prescribed by statute is the minimum standard

of care.  "Negligence is conduct which falls below the standard established by law for the

protection of others against unreasonable risk of harm."  2 Restatement of the Law 2d, Torts

(1965), Section 282.

There is some disagreement as to the applicable statutory standard.  Plaintiff argued in its

Motion for Partial Summary Judgment that Ohio Revised Code Section 3781.25 et seq., "The

Damage Prevention Act" is the appropriate statutory standard.  Defendant argues the project was

a public improvement project as defined by Ohio Revised Code Section 153.64(A)(1) "'Public

4

improvement' means any construction, reconstruction, improvement, enlargement, alteration, or repair of a building, highway, drainage system, water system, road, street, alley, sewer, ditch, sewage disposal plant, water works, and all other structures or works of any nature by a public authority." It is undisputed that this was a public improvement project and Akron RTA is a public authority.  O.R.C. 3781.27 specifically states, "Sections 3781.27 to 3781.32 do not apply to 'public improvements' as defined in section 153.64 of the Revised Code."  In its Reply Brief, MCI states that Brode has not offered any case law stating that duties imposed by the Damage Prevention Act may not be considered in conjunction with MCI's negligence *per se* claim.

This Court will not consider Ohio statutes  expressly inapplicable to the circumstances that give rise to the cause of action.  Therefore, the Court will not consider the duties imposed by O.R.C. 3781.27 to 3781.32, as the express language of the statute disclaims applicability to public improvements.  The appropriate statutory duties imposed on the parties are found in O.R.C. 153.64.  The Court also considered O.R.C. 3781.25 and 3781.26, which define the terms and discuss the Ohio Utility Protection Service.

Pursuant to O.R.C. 153.64, the parties are obligated to perform the following:

1) The contractor is required to notify the registered underground utility protection services at least two working days prior to beginning construction in writing, by phone or in person.

2) Within forty-eight hours of receipt of the notice the utility shall stake, mark, or otherwise designate the location of the underground facility to indicate course and depth. The marking shall be coordinated to stay approximately two days ahead of the planned construction.

5

3) The contractor must notify immediately the owner of the underground facility any break or leak on its lines made or discovered during the course of the excavation. Furthermore, the contractor shall not be responsible if it complies with the notification requirement and the underground cables are encountered not as marked, unless the contractor has actual notice of the underground facility.

Plaintiff argues:

1) Defendant notified the Ohio Utility Protection Services (OUPS) of its construction prior to in January 2002. MCI came out and accurately marked the location of its underground cables. Brode did not begin construction until March of 2002 after a winter of heavy snow and rains. This wait does not satisfy the notice requirement of O.R.C. 153.64.

2) Applicable Federal Regulations and Industry Standards may be considered as evidence of negligence, as the statutory requirements provide only a minimum standard of care.

Defendant argues:

1) Plaintiff mismarked the location of the cables and is therefore, contributorily negligent.

2) Brode complied with the statutory requirements and therefore, there can be no negligence *per se.*

3) O.R.C. 153.64 expressly states that if the contractor encounters the underground facility due to mismarking, the contractor shall not be liable, absent actual notice of the location of the underground cable.

## ANALYSIS

The Court denies Plaintiff's Motion for Partial Summary Judgment on negligence *per se.*

6

The evidence before the Court establishes that Brode complied with the express language of the notice requirement contained in O.R.C. 153.64 (C) in notifying MCI two working days prior to the commencement of construction. Plaintiff offers the case of *United Telephone Co. of Ohio, v. C.J. Mahan Construction Co.,* 63 Ohio App.3d 437 (10th Dist. 1989) for the proposition that waiting over two months from date of notification to actual commencement of the excavation does not comply with O.R.C. 153.64. The Court finds this case distinguishable. The Court, in *Mahan,* first found O.R.C. 153.64 inapplicable. The Court then found that the notification requirement was not met because the subcontractor doing the actual excavating never contacted the utility at least forty-eight hours prior to excavating. The subcontractor argued that the prime contractor's notice to the utility two months earlier satisfied the requirements of O.R.C. 153.64. Defendant never noticed the cable owner of its intention to dig.   In the case before this Court, Plaintiff was notified by Defendant, came out and marked its cable location.  In response, Defendant offers the case of *Northeast Ohio Natural Gas Corp., v. Stout Excavating, Inc.,* 804 N.E.2d 1040 (Ohio Ct. Of App. 2004).  In *Stout,* the contractor of a non-public improvement project, gave notice to the OUPS within the prescribed time period and three months later encountered the utilities gas line.  There was no evidence that the markings were removed or damaged in the three month gap between notice and injury.  The Court granted summary judgment in favor of the excavator.

This Court finds *Stout* instructive.  The notice requirements of O.R.C. 3781.27 are more stringent that those of O.R.C. 153.64.  O.R.C. 3781.27 requires notice to OUPS to occur "at least forty-eight hours but not more than ten days before commencing excavation."  O.R.C. 153.64 places no ten-day limit on notification.  The purpose of the notification is to provide the utility an

7

opportunity to mark the location of its underground facilities.  The evidence indicates that MCI did mark the location of its facility.  There is conflicting evidence that those marks were still in place at the time Brode encountered MCI's cables.  However, there is no dispute that MCI was noticed in January 2002 prior to the commencement of construction. The Court finds the express language of O.R.C. 153.64(C)  was met and the purpose of the notice requirement were met. Therefore, Plaintiff's negligence *per se* claim is overruled.

### Common Law Negligence

To prevail on a claim for negligence, the movant must establish that Defendant owed Plaintiff a duty of care; defendant breached that duty of care; and, Plaintiff's injury was proximately caused by Defendant's breach. *GTE North, Inc. v. Carr*, 618 N.E.2d 249, 250 (Ohio Ct. Of App. 1993).

At common law an excavator has a positive duty to inform itself of the location of underground cables not to damage them.  An excavator that digs without first locating underground utilities proceeds at its own risk. *Ohio Edison v. Wartko Co.*, 658 N.E.2d 1118, 1119-20 (Ohio Ct. Of App. 1995). *Carr*, 618 N.E.2d 249.  Brode argues its duty was met by complying with the notice requirement of ORC 153.64.  There is conflicting testimony on the accuracy of the mark of MCI's cable location. Under 153.64 (D) the excavator will not be liable under O.R.C. 153.64 if it encounters the underground cable "not as marked" and excavator had no actual notice of the location of the cables. This presents a question of fact for the jury.

The jury must decide whether the actual location of the cables were reflected in the markings provided to Brode by MCI, whether the original markings were damaged or destroyed and whether Brode had actual notice of the location of MCI's cable.  The Court, therefore,  finds

8

that there are genuine issues of material fact precluding summary judgment for either party.

## TRESPASS

As an initial matter the Court finds that Plaintiff's trespass claim is a trespass to persoanl property and not to real property. "While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort." *Compuserve, Inc. v. Cyberpromotions, Inc.*, 962 F. Supp. 1015 (S.D. Ohio 1997). In *Compuserve*, the Court, noting a dearth of Ohio case law on trespass to chattel, relied on the Restatements. The Restatement (Second) of Torts § 217(b) states that a trespass to chattel may be committed by intentionally using or intermeddling with the chattel in possession of another. Restatement § 217, Comment e, defines physical "intermeddling" as follows:

" intentionally bringing about a physical contact with the chattel. The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another[.]" Restatement (Second) of Torts § 218 determines when a claim for trespass to chattel may be actionable:

"One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if,

(a) he dispossesses the other of the chattel, or

(b) the chattel is impaired as to its condition, quality, or value, or

(c) the possessor is deprived of the use of the chattel for a substantial time, or

(d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest."

As in *Compuserve*, the Court finds that the paucity of Ohio case law on trespass to chatte<u></u>

9

necessitates reliance on the definitions set forth in Restatement (Second) of Torts. Specifically, §
217 requires an act by Defendant that brings it into an "intended physical contact with a chattel
in the possession of another". Since MCI has produced no evidence that Brode intended the
physical contact with the cables, no trespass claim may lie.

Therefore, the Court grants Defendant's Motion for summary judgment and denies
Plaintiff's Motion for Summary Judgment on Plaintiff's trespass claim.

### Third-Party Beneficiary and Breach of Contract

Plaintiff alleges that it is entitled to breach of contract damages as an intended third-party
beneficiary of the public improvement contract between Brode and Akron RTA. In Ohio, to
determine if a non-signatory to a contract may enforce certain promises contained in the
agreement, courts must determine if the non-party was an intended beneficiary using the "intent
to benefit" test found in *Hill v. Sonitrol*, 36 Ohio St. 3d 36, 40 (1988) citing *Norfolk & Western
Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980). "Under the 'intent to benefit' test if
the promisee... intends that a third party should benefit from the contract, then that third party is
an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no
intent to benefit a third party, then any third-party beneficiary to the contract is merely an
'incidental beneficiary,' who has no enforceable rights under the contract.
...[T]he mere conferring of some benefit on the supposed beneficiary by the performance of a
particular promise in a contract [is] insufficient: rather, the performance of that promise must
also satisfy a duty owed by the promisee to the beneficiary." *Id.*

Plaintiff alleges that the contract contains numerous performance requirements that are
intended to benefit MCI. Specifically, MCI cites to the terms of the Contract that require Brode

to give notification to underground facility owners, locate and prevent damage to known utilities, follow industry and OSHA standards, prevent damage to underground cables and assume responsibility for their repair or replacement. These general contract requirements do not expressly name MCI. In addition to these general contract requirements, Plaintiff alleges the Gannett Fleming Drawings (the architects) were incorporated into the Contract, as evidenced by deposition testimony of Mr. Steven Brode. These drawings include additional notice, "special care" in working in the vicinity of fiber optic cables, coordination with cable owners, and OUPS contact requirements. In addition, these documents specifically identify the fiber optic cable owner as MCI and provide MCI's contact information. The drawings identify the running path location of MCI's cable.

The Court finds that MCI is not entitled to bring an action on the contract between Akron RTA and Brode for the following reasons.

First, MCI has not met its evidentiary burden in establishing that the Gannett Fleming drawings containing the MCI cable line running path and contact information are incorporated into the contract. MCI offers the deposition testimony of Steven Brode that the drawings are part of the bid and therefore, the contract. However, the affidavit of Robert Pfaff, Executive Director, Secretary and Treasurer of Akron RTA, at paragraph two, states, "a true and accurate copy of Metro's contract with W.M. Brode Company ('Brode') (bates numbered BRODE 00501-00699)(hereinafter 'the Contract') is attached hereto as Exhibit A." (The Court notes that Plaintiff's sought to strike portions of Mr. Pfaff's affidavit but did not seek to strike paragraph two.) The Gannett Drawings are not found in the copy of the contract as attested by Mr. Pfaff. Mr. Pfaff signed the resolutions in conjunction with the contract and since Plaintiff relies upon

11

language recited in drawings that are questionably part of the Brode-Akron RTA contract, the Court is faced with a genuine issue as to what drawings, if any, were incorporated in the Contract. Therefore, as a determination of the legal standing of Plaintiff as an intended third-party beneficiary is a matter of law, the Court finds Plaintiff has not met its burden.

However, even if this Court were to consider the Gannett Drawings as specifically incorporated into the Contract, the Court would still find that Plaintiff was not an intended third party beneficiary. The contractual requirements impose no new duties upon Brode, but rather reinforce more specific terms for complying with duties already imposed on Brode by law. Plaintiff's cite to *MCI Telecommunications v. S.E. Johnson, et al.,* No. 1:93 CV 1946, (N.D. Ohio June 19, 1996) as support for its position that promised performance to protect the cable, specifically belonging to plaintiff, confers a third-party beneficiary status. The Court finds that case may be differentiated, as the agreement in *Johnson* contained a provision whereby the excavator was expressly prohibited from excavating until MCI first located the cable. The contractor and MCI where then expressly required to follow the requirements of Amended Substitute Senate Bill 174. The Gannett Drawings in the case before this Court do not contain similar language expressly identifying duties owed specifically by Brode to MCI. The drawings identify MCI's cable path and MCI's contact number. Any specific duties of notification, care, and coordination with utility owners are discussed in general and in the plural.

Therefore, the Court finds that MCI is not an intended third party beneficiary of the Contract between Brode and Akron RTA and grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment on Plaintiff's claim for breach of contract.

12

## Punitive Damages

Lastly, Defendant has moved for summary judgment on Plaintiff's claim for punitive damages. The Court grants Defendant's motion.

In Ohio, punitive damages are permitted pursuant to O.R.C. 2315.21, which states,

(A) "Tort Action means a civil action for damages for injury or loss to person or property..."

(C) Subject to division (D) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

(1) the actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression or insult...

(2) the plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section..."

Malice is not expressly defined in the statute and thus, Courts have looked to the Ohio Supreme Court for guidance. In *Preston v. Murty,* 32 Ohio St. 3d 334, (1987), the Ohio Supreme Court defined malice as:

(1) "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or

(2) a conscious disregard for the rights *and safety of other persons* that has a great probability of causing substantial harm."(emphasis added).

The burden of proof lies with Plaintiff to prove the elements of malice by clear and convincing evidence. O.R.C. 2315.21 (C)(3). Plaintiff's Amended Complaint does not allege hatred, ill will or a spirit of revenge but rather, expressly states Defendants' actions exhibited a

13

conscious disregard for the consequences.

This Court notes an apparent contradiction between the plain language of *Preston* and its subsequent application by Ohio Courts. However, it is undisputed that *Preston* is the current and valid definition for implied malice in Ohio. Pursuant to the Ohio Rules for the Reporting of Opinions, 1987. Rule 1(B) states, "the syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication. In addition, the *Ohio Jury Instructions* recite the *Preston* definition of malice as "the rights and safety of persons," as the applicable standard for finding implied malice. The Court may not consider the contradictory language found within the body of the *Preston* text.

According to the Ohio Supreme Court's own rules. Plaintiff must show by clear and convincing evidence that the rights **and** safety of persons were consciously disregarded by Defendant in order to maintain a punitive damages claim in Ohio. Plaintiff offers an FCC Memorandum and Opinion that states in pertinent part, "'network outages can and do cause disruption to business and government, and hold the potential for serious threat to public health and safety." In the Matter of Amendment of Part 63 of the Commission's Rules, FCC Docket No. 91-273, Memorandum and Opinion. Release No. FCC 93-491, 8 FCC reg 8517. 1993 FCC 5998, (Ex.62). The "potential for serious threat to public health and safety" does not rise to the evidentiary standard of clear and convincing required under Ohio law. Reasonable minds cannot differ that the mere possibility of harm does not demonstrate, by clear and convincing evidence. Defendant "consciously disregarded the rights and safety of persons". Plaintiff's failure to produce such evidence, compels the Court to grant summary judgment for Defendants.

14

## CONCLUSION

Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's negligence *per se* claim and overrules Plaintiff's Motion on the same. The Court grants Summary Judgment for Defendant on Plaintiff's breach of contract claim and overrules Plaintiff's Motion on the same. The Court grants Summary Judgment for Defendant on Plaintiff's trespass claim and overrules Plaintiff's Motion on the same. The Court grants Defendant's Motion for Summary Judgment on Plaintiff's claim for Punitive Damages. The Court denies Plaintiff and Defendant's Motions for Summary Judgment on the negligence and contributory negligence claims as these involve genuine issues of material fact.

IT IS SO ORDERED.

1/23/06
_____
Date

CHRISTOPHER A. BOYKO
United States District Judge
Original signature on file

15